**3:26MJ5074**

<u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Andrew J. Eilerman, being first duly sown, hereby depose and state as follows:

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been since May 2008. I am currently assigned to the Cleveland Division. I worked in the same capacity in the Cincinnati Division, Dayton Resident Agency and the Minneapolis Division, Grand Forks, North Dakota Resident Agency. I have investigated the commission of federal crimes involving criminal offenses and national security matters to include counterintelligence investigations, violent crimes, and drug trafficking. In the course of these duties, I have participated in numerous federal search and arrest operations and conducted associated interviews which have resulted in the collection of evidence and admissions of multiple criminal violations.

2.      This affidavit is in support of a criminal complaint against SIMON ANDREW TUCK. Based on the facts set forth in this affidavit, there is probable cause to believe that TUCK has committed violations of Title 18, United States Code, Section 2261A(2)(B), Stalking, which prohibits using any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce, with intent to injure, harass, or intimidate another person, to engage in a course of conduct that causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to that person, that person's immediate family member, or that person's spouse.

3.      My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigation conducted by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of supporting a criminal

1

3:26MJ5074

complaint, I have not included each and every fact known concerning this investigation. I have set forth only the facts I believe necessary to establish that probable cause exists.

**PROBABLE CAUSE**

4.      The United States is investigating TUCK for repeatedly harassing and intimidating VICTIM, who resides in the Northern District of Ohio and who works for a large company ("VICTIM COMPANY") headquartered in the Northern District of Ohio, by electronically submitting, via computer and internet, false reports about VICTIM to the VICTIM COMPANY and law enforcement. The nature of the content of the false reports and the sheer number demonstrate that TUCK has done so with intent to injure, harass, and/or intimidate VICTIM and his immediate family, which includes his wife ("N.M.").  That is, the content of the false submissions by TUCK to the VICTIM's employer and to law enforcement could result in VICTIM getting fired or disciplined by his employer and injured or killed in a police interaction while responding to false reports of an intended mass casualty incident and separate reports of violence or sexual abuse against his wife and/or children, as well as reasonably cause, or be expected to cause, VICTIM and his immediate family substantial emotional distress. The methods in which TUCK has done so include (but are not limited to) the following:

5.      Since November 15, 2025, TUCK has submitted numerous anonymous reports about VICTIM to the VICTIM COMPANY's dedicated complaints platform called Convercent, which is designed to receive reports from employees or the public. These submitted reports included various unfounded accusations that the VICTIM was using and selling drugs at work, had sexually assaulted numerous employees, had had an affair, and had sexual relations with kids. Other reports claimed to be written by the VICTIM offering his resignation. Other reports

2

3:26MJ5074

claimed to be individuals associated with a business deal in which the VICTIM COMPANY was actively engaged.

6.      Similarly, since November 15, 2025, TUCK has made numerous posts on Medium.com. Some of the posts claimed to be written by the VICTIM and spoke out against the VICTIM COMPANY and his own actions. Other posts claimed to be written by a friend of the VICTIM and claimed to be associated with Sector 16, a Russian hacking organization that is known to target U.S. gas and oil companies. In these posts, the VICTIM and VICTIM COMPANY were threatened.

7.      In addition, since November 15, 2025, TUCK has made over a dozen anonymous reports about VICTIM to different law enforcement agency hotlines and/or operation centers. These reports largely claimed that VICTIM was imminently attacking family or neighbors and/or harming children. Based upon my training and experience, criminal actors will sometimes make false reports to law enforcement and claim that the victim is threatening or carrying out violence against other individuals, often family members. The purpose of these false reports, known as "swatting," is to force a law enforcement response and confrontation with the victim in order to cause the victim physical, emotional, and/or reputational harm, which can also risk possible death due to a rapidly escalating critical response by law enforcement.

8.      Finally, since November 15, 2025, TUCK has sent numerous messages using anonymous Proton mail accounts in VICTIM's name to the VICTIM as well as VICTIM's friends, family, and children's school. In these messages, TUCK claimed that VICTIM was having affairs, sexually abusing children, and threatening the school.

9.      The first complaint submitted to Convercent about VICTIM was on November 15, 2025, at 6:14:24 PM.  This anonymous complaint alleged that in the last three months,

3

3:26MJ5074

VICTIM abused marijuana, including being high on the job, that he was in an inappropriate sexual relationship with a subordinate he supervises, and that he showed favoritism to this subordinate.

10.     On November 28, 2025, TUCK made a report to the Ohio Sexual Violence Hotline (OSVH), claiming that VICTIM was sexually abusing his wife at a neighborhood party. Of note, TUCK knew that VICTIM was at his second home on Catawba Island and was across the street at a neighbor's house at the time. The report was intended to (and did) cause a police response.

11.     Also on November 28, 2025, TUCK made a report to the FBI's National Threat Operations Center (NTOC), claiming that VICTIM intended to carry out a mass casualty event at the Detroit Metro Airport (DTW). VICTIM was in fact scheduled to fly out of DTW on behalf of the VICTIM COMPANY as part of the same business deal mentioned above. The NTOC report was made from IP Address **2a03:e600:100::4.** Open source IP Lookups indicate that **2a03:e600:100::4** is associated with The Onion Router (TOR). Based upon my training and experience, technical criminal actors will often use TOR when visiting websites or sending messages to obfuscate their IP addresses from law enforcement and avoid detection.

12.     On December 17, 2025, TUCK made another report to the FBI, claiming to be the VICTIM. In this report, he alleged that VICTIM was mentally unstable and planning a mass shooting.  The report was made from IP address **2a12:a800:2:1:45:80:158:143.** Open source IP Lookups indicate that **2a12:a800:2:1:45:80:158:143** is also associated with TOR.

13.     On January 13, 2026, TUCK made another report to the FBI, claiming to be VICTIM's neighbor. In this report, TUCK alleged that VICTIM was actively planning a mass casualty attack at an airport and was also sexually abusing his wife and children. The report was

3:26MJ5074

made from IP address **2001:67c:e60:c0c:192:42:116:198.** Open source IP Lookups indicate that **2001:67c:e60:c0c:192:42:116:198** is also associated with TOR.

14. On January 13, 2026, TUCK made another report to the Ohio Sexual Violence Hotline (OSVH), claiming that VICTIM was sexually abusing his wife and children at home. The report was intended to (and did) cause a police response.

15. On January 17, 2026, TUCK made another report to the FBI claiming that VICTIM was currently shooting people in his neighborhood and threatening his wife and children.

16. On January 20, 2026, TUCK filed an online report with VICTIM's children's school. In the report, TUCK pretended to be VICTIM's son and claimed that VICTIM abused him and his sister.

17. On January 21, 2026, the Liberty-Benton school where VICTIM's children attend received a contact form that had been drafted to appear as if authored by VICTIM's child.  The form claimed that VICTIM had been abusing the child and the child's sibling and that VICTIM threatened to kill them.

18. Also on January 21, 2026, VICTIM received an email from a @proton.me account which was drafted to appear as if authored by a close friend of VICTIM.  The email purported to be associated with a Russian ideological hacking group called SECTOR 16 and, in part, stated the following:

> "You think this is a threat? No.  This is prophecy. The west collapses under its own
>
> decadence while we stand eternal – steel in the permafrost, eyes on the celestial clock.
>
> Your school, your contacts, your pathetic little network – all fall within the blast radius.
>
> One signal from us, and **ракета 15П011** awakens.  No flags. No negotiations. Just fire

3:26MJ5074

from the sky."

19.     Between February 9 and February 12, 2026, the VICTIM COMPANY experienced numerous attempts to gain unauthorized access to secure data associated with the VICTIM via a network operated by the VICTIM COMPANY.

20.     On February 12, 2026, at 1:02 PM, the VICTIM COMPANY identified ten separate attempts to log into this secure account via IP address 2a0b:f4c2::3. The FBI was able to identify this IP address as being associated with TOR.

21.     On February 16, 2026, VICTIM's wife received an email from a funeral home located in VICTIM's hometown in response to an electronic submission to the funeral home via an online portal that purported to be authored by her, stating the following:

"I'm reaching out to learn more about your services as I prepare for the imminent passing of my soon-to-be ex-husband, [VICTIM's first name].  I would like to understand the process ahead.  Could we schedule a brief, confidential conversation about how things typically proceed when death is expected?  I'd appreciate an overview of coordination, documentation, and options available – particularly if circumstances unfold quickly as I anticipate they will.  I would like to schedule a call as soon as Monday if possible."

22.     On February 16, 2026, at 8:12:00 PM, an online submission form was sent to a local church in VICTIM'S hometown purporting to be authored by VICTIM'S wife and stating the following:

"I'm writing because [VICTIM first name], my soon-to-be ex-husband, will die by suicide very soon.  He's been making explicit threats, cleaning out his accounts, and cutting off contact with everyone. I am totally done with him but there's no one else to handle this.  I know he's not a member of your church – probably hasn't set foot in one in

6

3:26MJ5074

years.  I'm trying to get ahead of what's coming.  I'd like to know if your church would allow a funeral service for him, even under these circumstances.  I'm especially concerned about policies around suicide and non-members.  I'm not asking for comfort or counseling.  I just need to understand the logistics: fees, availability, documentation, and whether arrangements can be made in advance.  If someone could call me this week, I'd appreciate it.  I'd rather not wait until it's too late.  Please reach out at your earliest convenience.  [VICTIM's wife] [VICTIM wife's phone number]."

23.      On February 17, 2026, at 8:25 PM, email address sgtfranz419@proton.me sent an email to the VICTIM's personal and work email addresses claiming to be from SECTOR 16, with the subject line reading "Questions," and stating the following:

You think Sector16 only watches?

We're already inside your data, your devices, your life.

Our actions are digital - so far.

**But if we go physical (we will very soon), you know we have options.**

And the Russian mob in America?

As strong as Moscow. Stronger here.

Where is Beachwood, Ohio?

A quiet suburb. 11 miles from Cleveland.

A hub for those who think they've vanished.

Why is it relevant?

Because operatives from Novosibirsk, Miami, and Kazan are already there.

Because it's close.

3:26MJ5074

How far is it from you?

Close enough to hear the knock.

Who is paying us?

Why are they paying us?

Who gains?

Who wins?

What respectable lawyer couldn't use logic and reason?

Then again, what logic defends the indefensible?

Question what you think is hidden.

We've seen it.

Who is planning what?

We are.

We *can* be outbid.

But you can't afford it.  Ironic.  **Those who are paying us can outbid your safety.**

This channel will evaporate.

But we'll be on the next.

We listen on SOL: So11JSgBGXtPuLPjQiKy3u5CVuRXVMFnKuUELA2JRNu9x

And we're just getting started.

**Act fast if you want to see March. You won't. 1 big box or 1 plus 3 small.  That is your only choice.**

24.     VICTIM told Affiant that the above comment, "1 big box or 1 plus 3 small,"

refers to one casket for himself or three small caskets for his three children.  He took the above

3:26MJ5074

submission to be a threat of death against him and/or his children, causing him and his wife significant emotional distress.

25. On February 17, 2026, at 9:10 PM, the FBI National Threat Operations Center (NTOC) received an anonymous tip submitted electronically claiming to be from the VICTIM's wife and submitted from IP address 2605:6400:30:f805:1e96:b223:fbe5:cfac. Investigators know this IP address to be associated with the TOR Network. The tip submitted to the FBI claims that VICTIM is currently under investigation for the sexual assault of multiple minors over the past five years. The tip claims that there is a connection between VICTIM and a youth facility in Belarus.

26. TUCK's actions have caused, or would be reasonably expected to cause, VICTIM and his immediate family substantial emotional distress as a result of the content, quantity, and persistent nature of these false complaints and reports that have spanned four months and have escalated to false allegations involving VICTIM'S children, as well as referencing VICTIM'S and/or children's impending death and need for funeral arrangements.

*Identification of SIMON TUCK*

27. On or around December 16, 2025, the FBI spoke with VICTIM and his wife. Based upon this interview, the following information, in sum and substance, was identified:

28. There were several individuals who knew that VICTIM was planning on flying out of DTW for work, as referenced by the November 28, 2025, false report to the FBI. Of these individuals, one of the few who also knew that VICTIM and his wife were staying on Catawba Island and at a party across the street, as referenced by the November 28, 2025, OSVH report, was TUCK.

3:26MJ5074

29.     The VICTIM and his wife advised that over the past year TUCK had become emotionally dependent upon VICTIM's wife to the point where he was in therapy for codependence, despite the fact that TUCK was himself married. TUCK and VICTIM's wife worked out together on a regular basis and were in frequent communication through text or email. VICTIM advised that at times TUCK would give him jealous looks in connection with VICTIM'S wife.  Moreover, at times TUCK would appear to become perturbed if VICTIM's wife mentioned VICTIM or referred to their marriage.

30.     VICTIM and his wife advised that TUCK was skilled with IT. TUCK had set up the VICTIM's and his wife's home router and they believed he maintained access to it. TUCK also frequently utilizes AI.

31.     VICTIM advised that on November 15, 2025, his wife told TUCK about a large celebratory dinner being held that night for VICTIM by his bosses at the VICTIM COMPANY due to success in the business deal mentioned above. That same evening was when the first Convercent complaints against VICTIM began.

32.     On December 21, 2025, the FBI seized a number of devices from TUCK during execution of a search warrant on his residence and person (3:25MJ5490).  This resulted in seizure of electronic devices belonging to TUCK, including a Samsung S25 Ultra cell phone and a Google Chromebook.  Those devices are manufactured outside of Ohio.

33.     On December 21, 2025, FBI Task Force Officers interviewed TUCK's wife, Olga Livchak.  TUCK's wife advised in her interview that she was in Russia for a few weeks in November 2025, visiting her mother who is ill, and that she returned right before Thanksgiving. In addition to denying any knowledge or involvement in the offense, she was in Russia when the

**3:26MJ5074**

false electronic submissions began in mid-November.  Devices identified as belonging to TUCK's wife were examined and did not show evidence of involvement in the offense.

34.  Also on December 21, 2025, FBI agents interviewed TUCK.  Although denying the offense, he admitted he had used a VPN for years and that he also used AI.  He also admitted that he helped set up VICTIM's internet at their residence.  In addition, he stated that the sophisticated server found at his own residence by agents was a home integration system he set up using home integration software.  TUCK also admitted that he had cameras at his house, including in his garage, that captured VICTIM's wife when she came over.

35.  In January 2026, the FBI began a review of TUCK's Google Chromebook and discovered the following searches using the Google and the Brave[1] search browsers:

    a.  Grok

    b.  Medium.com

    c.  NordVPN

    d.  Proton.me

    e.  TOR Install

    f.  Marathonpetroleum.com

36.  In addition to the above searches, the FBI found a program on TUCK's computer called KillDisk. KillDisk is a program used to delete data from a computer so that it is unrecoverable by forensic tools. This program is known to be used extensively by cyber and sophisticated criminals. While it can be used by individuals before selling a used device, there is no legitimate reason to routinely use the program on a computer other than to prevent law

---

1 Brave is a free, open-source web browser, similar to Chrome, but with enhanced security, built-in VPN, and an integrated AI assistant.  It automatically blocks ads, trackers, third party cookies, and malicious scripts by default.

3:26MJ5074

enforcement from finding incriminating data. Documentation found on the computer indicated that TUCK utilized this program on multiple occasions.

37.     The FBI received 2703(d) records from Google in December 2025 that included IP activity logs associated with TUCK's Google account (simontuck@gmail.com). These compiled logs represented approximately 177,000 IP events, largely between November 1, 2025, and December 28, 2025. As mentioned above, several of the tips and complaints made to the FBI, VICTIM'S COMPANY, and state and local agencies utilized TOR and/or VPNs to obfuscate the reporter's identity.

38.     In January 2026, the FBI reviewed these IP logs and determined that: (1) TUCK primarily accessed his Google account using his home internet, which is provided by MetroNet, at TUCK's residence on Old Mill Road in Findlay, Ohio; and (2) despite this, TUCK accessed his Google account using TOR or VPNs during the times at which the criminal reports and complaints were made, including the ones detailed above. This indicates that TUCK had switched to one of these anonymizing services before electronically submitting complaints about the VICTIM.

39.     In January 2026, the FBI obtained and executed search warrants for Grok/x.ai (3:26MJ5012) and Google Inc (3:26MJ2013) reference TUCK's accounts.

40.     In January 2026, the FBI received the contents of TUCK's Google account from Google. Preliminary review of the search warrant return identified the following:

   a.   TUCK received an email from LinkedIn indicating that TUCK had viewed the VICTIM's LinkedIn profile on November 28, 2025. As discussed above, this was the same day that the first two swatting tips were made to the FBI and to local law enforcement.

3:26MJ5074

b.  TUCK conducted a search for "TOR on Chromebook."

c.  TUCK had at least 23 pictures of VICTIM's wife saved to his Google Pictures, spanning the time period from approximately August 24, 2025 to November 17, 2025. This included multiple pictures of VICTIM's wife while she was working out in TUCK's garage and wearing a tank top, sports bra, yoga pants, or similar exercise clothing. In these workout photos, it is not apparent that VICTIM's wife knew she was being recorded as she is not looking at the camera. TUCK also had a .gif image as well as several photo collages saved to his Google Pictures of these workout videos, suggesting that he spent additional time viewing and editing the photos of VICTIM's wife after taking them.

d.  TUCK sent numerous emails and text messages to VICTIM's wife. In some of these emails on December 15, 2025, TUCK attaches photos of himself shirtless. In multiple emails and text messages, TUCK includes heart emojis and statements such as "love you." In one text message, TUCK states "adulting is more fun with a partner." A screenshot of TUCK's phone showed that he had his text message conversation with VICTIM's wife pinned above the text message conversation with his own wife, Olga Livchak.

3:26MJ5074

41.     In February of 2026, the FBI received the results from the search warrant issued to Grok/x.ai for TUCK's account.  Preliminary review of the search warrant return identified the following:

    a.  Prompts and media used by the account, including personal schedules and health tracking, indicate that TUCK was the sole user of the GrokAI account in question.

    b.  There were prompts provided to GrokAI that generated approximately 200 pornographic videos of a woman who closely resembled VICTIM's wife's physical appearance. For example, in one prompt, TUCK queried: "In a sensual sports style, a confident blonde woman playfully undresses on a tennis court, starting with her white crop top pulled up to expose her bare breasts. She has long wavy hair, a toned athletic body, and a flirtatious smile, wearing a short navy pleated skirt and holding a racket. She slowly lowers her top, revealing full nudity, tosses her hair, and swings the racket teasingly, with a surprising clumsy spin like a comedic twirl."

    c.  There was a screenshot of a drop-down menu from Convercent, which identified specific departments under Marathon Petroleum Corporation's control.  It should be noted that in order to get to this drop-down menu, a user would first need to query the Victim Company and then proceed through several additional submission pages before reaching the final submission page shown in the screenshot. This image was uploaded to TUCK's Grok/x.ai account at 6:04:30 PM on November 15, 2025.  The

3:26MJ5074

initial submission to the VICTIM COMPANY through Convercent was at 6:14:24 PM on November 15, 2025, less than 10 minutes later.

42.     Moreover, the screenshot of the Convercent platform found on TUCK's Grok account contained partial words and letters in the background from the "Description" section of the Convercent report. By putting in the same text as that used in the November 15, 2025, Convercent complaint, the FBI was able to create an exact replica screenshot showing that TUCK's screenshot perfectly matched the actual Convercent complaint submitted on November 15, 2025.

43.     On February 2, 2026, investigators served a search warrant (3:26MJ5044) on MetroNet Internet Service provider to monitor TUCK's internet activity going to and from his home router at his Findlay, Ohio residence.  The warrant authorized the FBI to operate and review the data received from a Pen Register and Trap and Trace (PR/TT) on TUCK'S Internet activity associated with his home router.   The FBI has been receiving data as a result of this PR/TT since approximately February 12, 2026.  The following connections were identified from the PR/TT:

a.  TUCK made ten connections to IP address 162.243.167.202 on February 12, 2026, at 1:02 PM.  Investigators were able to identify that this IP address is associated with Digital Ocean.  Based on information Affiant obtained from another investigator who has received significant training in cyber-related investigations, Affiant knows that Digital Ocean is a virtual private server provider, which is often used as part of the TOR Network. These ten connections by TUCK occurred at the same time (1:02 PM) as

15

3:26MJ5074

the 10 unauthorized attempts to access the VICTIM COMPANY's network.

b. TUCK made connections to IP address 162.243.167.202 on February 16, 2026, at 8:11:59 PM, 8:12:00 PM, and 8:12:01 PM.  Investigators were able to identify that this IP address as being associated with Digital Ocean. The timing of these connections corresponds with the false submission to the local church at 8:12:00 PM on that same date.

c. TUCK made multiple connections to 162.243.167.202 on February 17, 2026, at 8:25 PM. Investigators were able to identify this IP as being associated with Digital Ocean. The timing of these connections corresponds with the email sent to the VICTIM at 8:25 PM threatening him with "1 big box" or him and his three children with "1 plus 3 small."

d. TUCK made connections to 100.70.95.240 on February 17, 2026, at 9:10:54 PM and at 9:10:56 PM.  Investigators were able to identify that this IP address was associated with Digital Ocean. The timing of these two connections corresponds with the submission of the FBI NTOC report at 09:10:55 PM as well as the automatically generated response that would have been received from the FBI.

3:26MJ5074

## CONCLUSION

44.     Based on the information contained herein, Affiant submits that probable cause exists that from November 15, 2025, to February 20, 2026, in the Northern District of Ohio, Western Division, SIMON ANDREW TUCK, committed violations of Title 18, United States Code, Section 2261A(2)(B).

45.     For all of those reasons, Affiant respectfully requests issuance of a complaint and warrant for TUCK's arrest.

Respectfully Submitted,

Andrew J. Eilerman
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to February 20th, 2026,
after submission by reliable electronic means
pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE